UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAREK BISZCZANIK,

                Plaintiff,

v.

NATIONSTAR MORTGAGE, L.L.C.,
and FEDERAL NATIONAL MORTGAGE
ASSOCIATION, d/b/a Fannie Mae,

                Defendants.

Case No. 2:16-cv-11957
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS'
SEPTEMBER 16, 2016 MOTION (DE 16) TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (DE 8)**

**I.**     **RECOMMENDATION:** The Court should grant Defendants' motion (DE

16) to dismiss Plaintiff's amended complaint (DE 8).

**II.**     **REPORT:**

        **A.**     **Factual Background[1]**

---

[1] To the extent this report refers to certain attachments to Defendants' motion to
dismiss, such as the note, the mortgage, the assignments of mortgage, and the
sheriff's deed (DEs 16-2 through DE 16-5), I agree with Defendants that
consideration of these attachments does not require the Court to convert this Rule
12 motion to dismiss into a Rule 56 motion for summary judgment. (DE 16 at 12-
13 n.1.) Although the note is not expressly mentioned, the concurrently executed
April 29, 2003 mortgage is a subject of Plaintiff's amended complaint. (*See*, *e.g.*,
DE 8 ¶¶ 28, 57, 59.) Likewise, although the assignments of the mortgage are not
expressly mentioned, they do establish the chain of title which leads to the
November 10, 2015 sheriff's sale – an event which is, indeed, a subject of the
amended complaint. (*See*, *e.g.*, DE 8 ¶¶ 16, 28.) As such these documents are

On December 6, 2000, the property commonly known as 6876 Meadowlake Road, Bloomfield, MI 48301 was warranted and conveyed to Marek Biszczanik for consideration of $280,000.  (DE 8-1 at 2.)  On April 29, 2003, Biszczanik borrowed $300,000 from lender Stratford Funding, Inc., and monthly mortgage payments were to be made to Waterfield Mortgage Company, Inc.  (DE 16-2.)  At the same time, Biszczanik executed a mortgage in favor of Stratford Funding.  (DE 16-3.)  On the same day, Stratford Funding assigned the mortgage to Union Federal Bank of Indianapolis.  (DE 16-4 at 2.)  On April 20, 2006, to be effective May 1, 2006, Union Federal assigned the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS).  (DE 16-4 at 3.)

On July 20, 2015, MERS assigned the mortgage to Nationstar.  (DE 16-4 at 4.)  By a notice dated August 19, 2015, Nationstar Mortgage (Nationstar) informed Biszczanik that his loan was currently 199 days past due, that failure to bring the loan current "may result in…foreclosure and the loss of your home[,]" and

---

either:  (1) referred to in the complaint and central to Plaintiff's claims, *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp.2d 718, 721 (E.D. Mich. 2003) (internal citations omitted), or (2) matters regarding which I may take judicial notice, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). This includes documents such as notes, mortgages and assignments. *Thompson v. Bank of N.Y. Mellon Trust Co.*, No. 4:13CV000120 SWW, 2013 WL 12180765, at *2 (E.D. Ark. Sept. 3, 2013).

mentioned some "solutions that *might* be available[,]" including several options

which "may" be acceptable to the note holder, suggesting the possibility of

"*exploring* solutions that *could* help you keep your home." (DE 8-1 at 8)

(emphases added). On August 20, 2015, notice that sale would occur on

September 15, 2015 was posted at the subject property. (DE 16-5 at 6.) Notice of

the foreclosure sale scheduled for September 15, 2015 was also published in the

Oakland County Legal News on dates from August 12, 2015 through September 2,

2015. (DE 16-5 at 7.)

      Meanwhile, on August 31, 2015, Kendra Pack of Bloomfield Financial

Services ordered Real Estate Services and Technology (REST) reports, including

an affordable mortgage payment analysis, a loan disposition analysis, and an EPV /

NPV (Net Present Value) break-even analysis. Included in these reports were

HAMP Tier 1 and HAMP Tier 2 analyses. (*See* DE 8-2 at 2-5, 42.) On September

8, 2015, Ms. Pack communicated with Gary Melendez of Nationstar. (DE 8-3 at 2,

4.) By a letter dated September 10, 2015, Nationstar acknowledged receipt of

Biszczanik's application for loss mitigation options and supporting documentation.

(DE 8-3 at 6-7.) On or about September 25, 2015, Nationstar informed Biszczanik

that it was "unable to grant [hi]s request at this time[,]" and provided a number of

reasons for its decision. (DE 8-4 at 2-3.)

Biszczanik's request for reconsideration is dated October 26, 2015 and asserts that use of the "proper gross monthly income" would lead to a debt to income (DTI) ratio "well within [the] guidelines[,]" and "an acceptable Hamp Tier 1 modification . . . ." (DE 8-4 at 6-7.) That same day, Ms. Pack emailed Biszczanik's "signed appeal" to Mr. Melendez. (DE 8-4 at 5.) Approximately two weeks later, by way of a November 10, 2015 sheriff's deed on mortgage sale, the property was granted to Federal National Mortgage Association (Fannie Mae) for consideration of $284,945.25. (DE 8-1 at 4-6; *see also* DE 16-5 at 2-5, 8.) This resulted in a date of redemption of May 11, 2016, under Michigan's six month redemption rule. Mich. Comp. Laws §§ 600.3240(1), (8). (DE 8-4 at 11-12.)

By a letter dated February 22, 2016, Nationstar confirmed receipt of Biszczanik's January 11, 2016 correspondence[2] and informed him "the new expected date of resolution is March 15, 2016." (DE 8-4 at 9.) In a March 14, 2016 letter to Ms. Pack, Nationstar responded about: (1) the modification timeline, (2) the delay in receiving the Modification Denial and Net Present Valuation (NPV) Worksheet, and (3) the foreclosure chronology. (DE 8-4 at 11-12.) Biszczanik wrote to Nationstar on or about May 5, 2016, claiming that he was not

---

[2] The Court was unable to locate this correspondence in the record before it.

properly notified of the new, November 10, 2015, sheriff's sale date.  (DE 1-2 at 98-99.)[3]

## B.     Procedural History

### 1.     The instant lawsuit

On May 9, 2016, via counsel, Plaintiff filed a state court complaint against Nationstar to quiet title seeking to set aside sheriff's sale and toll the running of the redemption period.  (DE 1-2 at 26-39, Case No. 2016-152908-CH (Oakland County Circuit Court).)  On May 25, 2016, Judge Denise Langford Morris entered a temporary restraining order (TRO) and order to show cause.  Among other things, this order stayed and tolled the redemption period and set a show cause hearing for June 1, 2016.  (DE 1-2 at 2-3.)

Defendant Nationstar removed the case to this Court on May 31, 2016.  (DE 1, DE 1-3.)  On July 29, 2016, Plaintiff filed an amended complaint against Nationstar and Federal National Mortgage Association, also known as Fannie Mae. The causes of action include quiet title, breach of duty under Home Affordable Mortgage Program (HAMP) guidelines, promissory estoppel, equitable estoppel, breach of Mich. Comp. Laws § 600.3204, specific performance, and injunction and other relief.  (DE 8.)

### 2.     Fannie Mae's May 19, 2016 state court complaint for termination of tenancy

---

[3] This appears to have been an exhibit to Plaintiff's state court complaint.

On May 19, 2016, over two months before it was named as a defendant in the case at bar, Fannie Mae filed a termination of tenancy complaint in Michigan's 40th District Court against Biszczanik and "all other occupants." Specifically, Fannie Mae alleged that "person(s) remain in possession of property after the period of redemption has expired [Mich. Comp. Laws § 600.5714(1)(g)][.]"

These defendants – presumably Biszczanik and "other occupants" – answered the complaint on May 31, 2016 and, further, presented the sole defense that "the redemption period has not expired." (DE 32-3 at 2-6.) Attached to their answer was a copy of the May 9, 2016 state court complaint filed in Oakland County Circuit Court (DE 32-3 at 11-24) and the May 25, 2016 Oakland County Circuit Court TRO and order to show cause (DE 32-3 at 8-9). *See* Case No. 1631531LT3 (48th District Court). On August 18, 2016, Judge D'Agostini found that Fannie Mae "has a right to recover possession of the property." She ordered that Fannie Mae can apply for an order evicting the defendant if the defendant does not move out on or before August 29, 2016. She also denied defendant's motion to dismiss. (DE 32-4 at 2.)

A claim of appeal was filed on August 29, 2016. *See* Case No. 16-154770-AV (Oakland County Circuit Court). On March 10, 2017, Judge Michael Warren entered an opinion and order affirming the trial court's judgment of possession. Generally, Judge Warren stated: "Because Biszczanik has defaulted on a mortgage

and has failed to show that Plaintiff [Fannie Mae] failed to follow appropriate foreclosure procedures, the trial court did not err and its ruling is affirmed." (DE 32-5 at 2-3.) More specifically, he concluded that: (A) "The appeal is grounded on issues that have not been properly preserved for appellate review[,]" (B) "The appeal is not salvaged by documents that were not part of the record below[,]" and (C) "The lower court record supports the judgment entered by the trial court in [Fannie Mae's] favor[.]" (DE 32-5 at 7-12.)

On April 27, 2017, Plaintiff filed a delayed application for leave to appeal to the Michigan Court of Appeals. (DE 33-1.) The docket in that case indicates that a letter was sent to all parties on May 1, 2017. *See* Case No. 338134 (Mich. App.).

## C.    Instant Motion

Currently before the Court is Defendant Nationstar and Defendant Fannie Mae's combined motion to dismiss Plaintiff's amended complaint, in which they argue that: (1) Plaintiff is not entitled to an order quieting title to the property, (2) Plaintiff has not stated a cognizable claim for breach of duty under the HAMP guidelines, which provide no basis for a private cause of action, (3) Plaintiff's various claims based on an alleged agreement for a loan modification should be dismissed, (4) Plaintiff has not identified any error in the foreclosure process permitting reversal of the foreclosure sale, and (5) Plaintiff's claim for injunctive relief fails as a matter of law. (DE 16 at 16-28.)

Plaintiff filed a response, and Defendants have filed a reply. (DE 19, DE 21.)[4] Judge Cleland has referred this motion to me for entry of a report and recommendation. (DE 20, DE 27.) In addition to the above-described motion papers, the parties have also been permitted to and filed supplemental briefs. (DE 32, DE 33.)

### D. Fed. R. Civ. P. 12(b)(6)

Defendants bring their motion pursuant to Federal Rule of Civil Procedure P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all

---

[4] In addition to being a response, Plaintiff's October 17, 2016 filing purports to be a "request for a settlement conference by the *magistrate*." (DE 19 at 1, 2 (emphasis added).) *Preliminarily*, I note that Plaintiff's various references to "magistrate," both within the body of the response and the various captions, are incorrect. (DE 19 at 1, 2, 9, 25, 26.) Defendants make the same mistake in the captions of their motion and reply. (DE 16 at 1, 3; DE 21 at 1.) The parties are put on notice that, in federal court, there are only "magistrate judges," and this has been so for the past quarter century. 28 U.S.C. §§ 631-639; *see also* Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990); *see note*: "Change of Name," 28 U.S.C. § 631 ("Section 321 of Pub.L. 101–650 provided that: "After the enactment of this Act [Dec. 1, 1990], each United States magistrate appointed … shall be known as a United States magistrate judge ...").) *Substantively*, any request for a settlement conference should be sought by way of a separate filing presented to the district judge, as the only matters referred to me are the instant motion to dismiss (DE 16) and the related motion for leave to file a supplemental brief (DE 28). Moreover, I note that, on February 24, 2017, Judge Cleland denied Plaintiff's November 3, 2016 motion for a settlement conference, stating that "[t]he court does not ordinarily devote court or other resources to mandating settlement discussion unless both parties are in agreement on the utility of such efforts." (DE 22, 26.) That Defendants' October 31, 2016 reply is silent on the issue of settlement (DE 21) convinces the Undersigned that circumstances have not changed.

allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

E.   **The Court Should Grant Defendants' Motion on the Basis That Plaintiff Has Failed to State a Claim Upon Which Relief May Be Granted.**

1.   **Quiet title**

"To state a claim for quiet title under Michigan law, a plaintiff must show '(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim.'" *Mandingo v. PNC Bank Nat'l Ass'n*, No. 2:15-CV-12079, 2017

WL 914026, at *3 (E.D. Mich. Mar. 8, 2017) (citing MCR § 3.411(B)(2)

(providing elements for action to quiet title under Mich. Comp. Laws § 600.2932)).

Defendants are entitled to dismissal of Plaintiff's "quiet title" cause of

action.  First, Plaintiff's claimed interest in the premises is unclear.  As previously

noted, "Michigan law explicitly provides that mortgagors of residential properties

have six months from the date of the sheriff's sale to redeem the property."  *Jarbo*

*v. Bank of New York Mellon*, 587 F.App'x 287, 289 (6th Cir. 2014) (citing Mich.

Comp. Laws §§ 600.3240(1), (8)).  "When the six-month period expires, the

mortgagor forfeits any right, title, or interest he or she had in the property."  *Jarbo*,

587 F.App'x at 289 (citing Mich. Comp. Laws § 600.3236; *Piotrowski v. State*

*Land Office Bd.,* 302 Mich. 179, 4 N.W.2d 514, 517 (1942)).  Plaintiff's own

complaint admits that he "did attempt to redeem the property however because of

the shorten[ed] redemption period Plaintiff ran out of time . . . ."  (DE 8 ¶ 19.)[5]

To be sure, Plaintiff does, in his amended complaint, "request[] an extension

of the redemption period."  (DE 8 ¶ 19.)  He also responds that the redemption

_____

[5] Although the Court notes Plaintiff's allegation that he received the September 25, 2015 denial letter "thirty (30) days later[,]" which would have been on or about October 25, 2015, it is not clear to the Court what Plaintiff means by a "shorten[ed] redemption period . . . ."  (*See* DE 8 ¶¶ 13, 19.)  It seems undisputed that the 6-month redemption period here began with the November 10, 2015 sheriff's sale and expired on May 10 or 11, 2016.  (DE 8 ¶¶ 16, 28, 74; *see* DE 8-1 at 6.)  The Court can only assume that Plaintiff is referring to the period between the March 14, 2016 letter denying his appeal/reconsideration and the May 11, 2016 expiration of the redemption period.  (DE 8 ¶ 18; DE 8-4 at 11-12.)

period should be extended "as a matter of equity." (DE 19 at 21.) However, Plaintiff must "clearly show[] fraud or irregularities *in the foreclosure process* that actually prejudiced the mortgagor in preserving his or her interest in the property." *Jarbo*, 587 F.App'x at 289 (emphasis added) (citing *Khoshiko v. Deutsche Bank Trust Co. Ams.,* 574 F.Appx. 539, 540–41 (6th Cir.2014)). Within his quiet title claim, Plaintiff alleges that Defendant "erroneously used incorrect information *to deny Plaintiff the HAMP Loan Modification*[,]" and "refused and failed *to offer Plaintiff a HAMP Loan Modification*," and "we[nt] forward with the Sheriff's Sale *without notice* to the Plaintiff or his representatives and failed to rescind the unlawful Sheriff's Sale." (DE 8 ¶¶ 22, 23 (emphases added).)

Of these, only the allegation of the lack of notice of the November 10, 2015 sheriff's sale and the failure to rescind it is related to the foreclosure process; the other allegations related to HAMP loan modification. *See*, *e.g.*, *Williams v. Pledged Prop. II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012) ("Williams's claim of fraud relies on oral assurances during a negotiation to change the terms of the contract. Despite the fact that the negotiations may have taken place during the foreclosure process, these negotiations remained separate from the foreclosure process itself."). However, even if the claimed "fraud" or "irregularity" in the foreclosure process was the failure to notify Plaintiff of the forthcoming November 10, 2015 sheriff's sale (or the failure to rescind it once it happened), the Court must

consider whether the alleged prejudice of not being able to "file a lawsuit to convert the foreclosure by advertisement into a judicial foreclosure[,]" (DE 8 ¶ 19; *see also* DE 19 at 11, 14, 18 and 20), "actually prejudiced" Plaintiff in preserving his interest in the property. *Jarbo*, 587 F.App'x at 289. Assuming such an opportunity was an appropriate step under the circumstances of this case, Plaintiff has not explained how a judicial foreclosure would have resulted in the preservation of the interest in his property. Moreover, Plaintiff asserts in his motion response that his representative – perhaps Ms. Pack - received notice of the November 10th sheriff's sale the very next day, apparently still leaving him with six months in which to redeem. (DE 8 ¶ 16, DE 19 at 14). If this is accurate, it is unclear how he was appreciably prejudiced.

Second, "quiet title is a remedy, not a freestanding claim." *Jarbo*, 587 F. App'x at 290 (citing *Goryoka v. Quicken Loan, Inc.,* 519 F.Appx. 926, 928 (6th Cir.2013)). "Like a request for an injunction or disgorgement, a request for quiet title is only cognizable when paired with some recognized cause of action." *Jarbo*, 587 F. App'x at 290. Therefore, because Plaintiff asserts his quiet title claim as a "as a discrete count," coupled with his failure to allege the superiority of his title claim, and his failure to pair it with a legally cognizable claim (as discussed *infra.*), it should be dismissed. *Id*.

### 2. Breach of duty under HAMP guidelines

Plaintiff alleges that the August 19, 2015 letter from Defendant Nationstar "offer[ed] modification assistance."  (DE 8 ¶ 9.)  In this cause of action, Plaintiff alleges that "once the Defendant *offered* Plaintiff modification assistance Defendant had to properly consider Plaintiff for a HAMP Loan Modification." (DE 8 ¶ 26 (emphasis added).)  Furthermore, Plaintiff alleges:

> Defendant[s] breached their *duty* by failing and refusing to properly
> consider Plaintiff for a HAMP Loan Modification, in that Defendant
> erroneously used incorrect information to deny Plaintiff the HAMP
> Loan Modification, refused and *failed to offer* Plaintiff a HAMP Loan
> Modification, then going forward with the Sheriff's Sale without
> notice to the Plaintiff or his representatives and finally failing to
> rescind the unlawful Sheriff's Sale.

(DE 8 ¶ 27 (emphases added).)

This alleged "erroneous use" appears to be "incorrect information for the NPV calculation."  (DE 8 ¶ 36.)  As Plaintiff contends:  "HAMP Supplemental Directive 09-01, p. 4., April 6, 2009, provides that if the NPV calculation result for the modification scenario is greater than the NPV result for no modification, the servicer *must* offer the modification." (DE 8 ¶ 34.)  By way of background, Plaintiff generally alleges that Defendant Nationstar's September 25, 2015 denial letter "failed to provide a Net Present Value worksheet, although requested by Plaintiff for several weeks."  (DE 8 ¶ 13, DE 8-4 at 2-3.)  Contending that Defendant Nationstar misread the original modification request and used an

incorrect income figure, Plaintiff asserts that faulty analysis resulted in the October 26, 2015 denial.  (DE 8 ¶¶ 14-15.)  On October 26, 2015, he provided an updated/revised profit and loss statement and requested an appeal/reconsideration, but it was denied on March 14, 2016.  (DE 8 ¶¶ 15, 17-18.)  According to Plaintiff, the denial was "factually incorrect," including that "Defendant misread Plaintiff's NPV worksheet that clearly indicated that Plaintiff was qualified and eligible for a HAMP loan modification."  (DE 8 ¶ 18b.)

That all may be so.  However, as this Court has previously held, "assuming that the Lending Statutes impose a duty on Defendant to modify Plaintiff's mortgage (which they do not)," HAMP "do[es] not create a private right of action under which Plaintiff may seek relief."  *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010).  Plaintiff responds that "non-compliance" with HAMP "can be raised *as a defense* to foreclosure[.]"  (DE 19 at 15-17 (emphasis added).)  Relying upon *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 160, 167 (6th Cir. 2014), which held that the Protecting *Tenants* at Foreclosure Act of 2009 (PTFA) "does not provide an express or implied private right of action[,]" and that Plaintiffs *can* "use violations of the PTFA to establish their state law claims[,]" Plaintiff contends that he "was entitled to raise the failure of Defendants to properly evaluate his application for mortgage assistance as a defense to his foreclosure."  (DE 19 at 16.)  However, to the extent Plaintiff

attempts to bring a state-law negligence claim, based upon an alleged violation of *HAMP*, he has failed to state a claim upon which relief may be granted. "While the allegations that Fannie Mae failed to comply with HAMP regulations may provide evidence of negligent conduct under Michigan law, [Plaintiff] must still show that the HAMP regulations impose on servicers a duty of care owed to borrowers." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 299 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 272 (2015). "Michigan courts have not recognized that such a duty exists under HAMP. Its decision accords with the decisions of other Michigan federal district courts that have declined to find a duty exists under Michigan law." *Campbell*, 611 F. App'x at 299. *See also Rush v. Mac*, 792 F.3d 600, 605 (6th Cir. 2015), *reh'g denied* (Aug. 12, 2015); *Ray v. U.S. Bank Nat. Ass'n*, 627 F. App'x 452, 457 (6th Cir. 2015).

Also, Plaintiff contends that Defendants "are mandated to abide by CFPB [Consumer Financial Protection Bureau] regulations and standards in evaluating homeowners for loan modifications prior to placing them in foreclosure, which is in keeping with the statements made by Defendant's representatives." (DE 19 at 19.) However, while the Court notes a reference to the CFPB within the August 19, 2015 letter (DE 8-1 at 8), the Court does not see a reference to a CFPB regulation within the complaint's allegations. Therefore, to the extent it cites the CFPB, Plaintiff's response is unavailing.

### 3. Promissory estoppel, equitable estoppel and specific performance

#### a. The Statute of Frauds

Plaintiff's claims for promissory estoppel and equitable estoppel are based on alleged promises and representations that: (a) Plaintiff would be offered modification assistance; (b) "the September 15, 2015, Sheriff's Sale would be postponed indefinitely pending the application for modification[;]" and/or (c) that Plaintiff's eligibility for HAMP or other modification assistance would be properly assessed. (DE 8 ¶¶ 37, 38, 47; *see also* DE 8 ¶ 50.) Likewise, Plaintiff's specific performance cause of action treats Defendant Nationstar's August 19, 2015 letter as an "offer" of modification assistance, which Plaintiff claims to have "accepted" and met its conditions; still, Plaintiff alleges that "Defendant failed or refused to continue with the Loan Modification and incorrectly and unlawfully denied Plaintiff a HAMP loan Modification." (DE 8 ¶ 62-63.)

Defendants argue that these three causes of action are barred by Michigan's Statute of Frauds. Mich. Comp. Laws § 566.132 ("Agreements, contracts, or promises for which signed writing required; enforcement"). (DE 16 at 19-21.) In particular, this statute provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

(a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2). The Court should agree.

### i.     Promissory estoppel and specific performance

First, Plaintiff treats the August 19, 2015 letter from Defendant Nationstar as "offering modification assistance." (DE 8 at ¶¶ 9; *see also* DE 19 at 17.) However, Defendants argue that the August 19, 2015 letter "does not constitute an offer for a loan modification," but, rather, it "informed Plaintiff that he was in default under his payment obligations and that a loan modification may be an option." (DE 16 at 22; *see also* DE 21 at 5.) On the face of the document, this is entirely accurate. Specifically, the letter states:

Here are some of the solutions that might be available, depending on your situation:

- Modifying the terms of your current loan.

- Receiving a payment forbearance that temporarily gives you more time to pay your monthly payment.

- If you simply can't pay your mortgage, an alternative to foreclosure may be selling your home and using the proceeds to pay off your current loan. A short payoff may be acceptable, or a deed in lieu of foreclosure may be an option.

(DE 8-1 at 8.)  Thus, the letter does not constitute a promise, let alone an agreement to modify his loan.  Consistent with that interpretation, as Defendants point out, is Plaintiff's own allegation that he was "unlawfully denied . . . a HAMP loan Modification."  (DE 8 ¶ 63; DE 16 at 23.)

Furthermore, even if the letter contained an actual promise, it "does not satisfy the Statute of Frauds, as it is not a written commitment for a financial accommodation nor does it include an authorized signature by Nationstar."  (DE 21 at 5.)  The Court can hardly be expected to require specific performance of an unenforceable promise.  Much less can the Court be expected to enforce an *oral promise* – such as the one possibly alleged in paragraph 38 of the amended complaint that the sheriff's sale "would be postponed indefinitely pending the application for modification"– when the alleged commitment clearly involves "a delay in repayment or performance of a loan," or a promise to "extend, modify, or permit a delay in repayment or performance of a loan…or other financial accommodation[,]" all of which fit squarely within the statute of frauds.  Mich. Comp. Laws § 566.132(2).[6]

Similar attempts to get around the statute of frauds by pleading promissory estoppel have been consistently rejected by this Court and others.  For example, in

[6] Plaintiff generally alleges that his own May 5, 2016 letter, which expresses "shock" at "the actions of [his] mortgage company[,]"supports this "postponement."  (*See* DE 8 ¶ 12; DE 8-3 at 9-10.)  It is unclear how.

*Wypych v. Deutsche Bank Nat'l Trust Co.*, No. 16-cv-13836, 2017 WL 1315721,

*6 (E.D. Mich. Apr. 10, 2017), a case decided by Judge Leitman just last month,

the plaintiff's complaint strikes a familiar tone, alleging:

> Defendants promised Plaintiff approval of the loan modification on
> submittal of the required documents. Plaintiff, relying on Defendants'
> statements, submitted all requisite documents timely on reasonable belief
> that he could be to protect his home from being foreclosed. Thereby,
> Defendants induced Plaintiff to refrain from defending the foreclosure,
> which ultimately led to the sheriff's sale causing damages to Plaintiff.

The Court stated in no uncertain terms that promissory estoppel cannot be used to

avoid the prohibitions of the statute of frauds:

> Wypych's reliance on the doctrine of promissory estoppel fails. As
> this Court has previously recognized — in a case involving Wypych's
> counsel — Michigan's statute of frauds, M.C.L. § 566.132(2),
> "requires that any agreement by a financial institution to modify a
> loan agreement or forbear from proceeding with their foreclosure
> rights must be in writing and signed by an authorized agent of the
> financial institution." *Fredericks*, 2015 U.S. Dist. LEXIS 70883, 2015
> WL 3473972, at *5. And Wypych cannot avoid this statute of frauds
> on the basis of promissory estoppel. As this Court has explained,
> "under the 'unqualified and broad ban' of section 566.132," a plaintiff
> "is precluded from bringing a claim — no matter its label — against
> [a financial institution] to enforce the terms of an oral promise ...
> including [an] action[] for promissory estoppel.'" 2015 U.S. Dist.
> LEXIS 70883, [WL] at *6 (*quoting Crown Technology Park v. D & N
> Bank*, FSB, 242 Mich. App. 538, 619 N.W.2d 66, 72 (Mich. App.
> 2000)); *see also Koole v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist.
> LEXIS 57455, 2016 WL 1732731, at ** 7-8 (E.D. Mich. Apr. 29,
> 2016) (rejecting same promissory estoppel argument raised by
> Wypych's counsel in [*13] different mortgage foreclosure case);
> *Martin v. Bank of New York Mellon Corp.*, 2015 U.S. Dist. LEXIS
> 157050, 2015 WL 7352006, at *4 (E.D. Mich. Nov. 20, 2015) (same).
> Thus, promissory estoppel cannot save Wypych's claims here.

*Id.* Simply stated, a promissory estoppel claim based upon reliance on a loan modification agreement is barred by the statute of frauds without evidence of a signed, written modification agreement. *Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66 (2000). Given the number of cases which have so held, it is surprising that Plaintiff's counsel would have been unaware of the inefficacy of such a claim. *See, e.g., See Vittands v. Bank of Am., NA,* No. 11-CV-15241, 2012 U.S. Dist. LEXIS 67651, 2012 WL 1696708, at *4 (E.D. Mich. May 15, 2012) (internal citations omitted) (finding that estoppel claim was merely a creative attempt at skirting the evidentiary burden established by the Statute of Frauds, which Michigan courts have made clear "effectuates a broad ban on claims against financial institutions to enforce promises regarding loan modifications"); *Watts v. Mortg. Bridge Solutions, LLC*, 2016 U.S. Dist. LEXIS 183222, *30-31 (E.D. Mich. Dec. 7, 2016) (Cleland, J.) ("To the extent that such a claim has been pleaded, it certainly appears to be barred by the statute of frauds.").

### ii.    Equitable estoppel

Similarly, the statute of frauds cannot be avoided by pleading a claim for equitable estoppel. *Blackward Props., LLC v. Bank of Am.*, 476 F. App'x 639, 641 (6th Cir. 2012) ("Blackward persists that equitable exceptions to the statute of frauds—promissory estoppel, part performance, unjust enrichment—save its claim. Blackward is wrong on each front.") (citing *Crown*, 619 N.W.2d at 73); *Coleman*

*v. Ditech Fin.*, 2016 U.S. Dist. LEXIS 82309, *11-12, 2016 WL 3522556 ( E.D. Mich. June 24, 2016) (Levy, J.) ("Even accepting as true plaintiff's assertion that he signed and returned the Loan Modification Agreement, plaintiff does not allege that defendant signed that agreement; therefore Michigan's Statute of Frauds dictates that the Loan Modification Agreement does not govern any promises between these two parties. It follows that plaintiff's breach-of-contract claim based on the Loan Modification Agreement is unavailing, as are his claims based on promissory estoppel, equitable estoppel, and implied contract.") (citing *Crown*, 242 Mich. App. at 550, for the proposition that the Michigan statute of frauds "is meant 'to preclude all actions' against financial institutions."). Likewise, partial performance does not remove the claim from the Statute of Frauds. *See Saad v. Wayne Cnty. Register of Deeds,* No. 11-15590, 2013 U.S. Dist. LEXIS 95218, 2013 WL 3455628, at *6 (E.D. Mich. July 9, 2013) ("[P]art performance is not sufficient to remove a claim from the statute of frauds applicable to financial institutions."); *see also, Blackward Props*, 476 F. App'x at 642 ("If not promissory estoppel, what about part performance?" – argument rejected).

### iii.    "Dual tracking"

Nor do Plaintiff's allegations about "dual tracking" change this conclusion. Specifically, within his causes of action for promissory and equitable estoppel, Plaintiff's alleges that "dual tracking," *i.e.*, simultaneously engaging in the loan

modification process and pursuing a sheriff's sale, is "expressly prohibited." Yet, he doesn't identify which particular regulation prohibits it. (DE 8 ¶¶ 41, 51.) Here, the Court assumes that Plaintiff's reference to 12 C.F.R. Part 1024 (DE 8 ¶¶ 41, 51) can be narrowed to those regulations related to "Mortgage Servicing," 12 C.F.R. §§ 1024.30-1024.41. In particular, the Court looks to 12 C.F.R. § 1024.41 ("Loss mitigation procedures."), which states, in part: "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." Therefore, Plaintiff's allegations about "dual tracking" do not state a claim upon which relief may be granted.

### iv.    Lost opportunities

Finally, the same can be said about Plaintiff's allegation that he "lost the opportunity to pursue other loss mitigation opportunities to save his home," for example, by "seeking another type of loan modification, refinancing the existing loan, pursuing a short sale or renting the property and relocating." (DE 8 ¶ 43; *see also* DE 8 ¶ 60.) To be sure, the Court recognizes that some of these options were discussed within the aforementioned August 31, 2015 REST reports ordered by Plaintiff's representative, such as analysis of "HAMP Tier 1," "HAMP Tier 2," "other loan workout alternatives," "short sale," "foreclosure," and "bankruptcy." (*See*, *e.g.*, DE 8-2 at 6.) Moreover, Plaintiff's May 5, 2016 letter contends that the failure to properly notify him of the November 10, 2015 sheriff's sale resulted in

him not being able to avail himself of "other legal remedies such as bankruptcy." (DE 8-3 at 9.)  However, Plaintiff's claim about these lost opportunities is unavailing given that the promissory estoppel count in which he makes this allegation is, as discussed above, barred by the Statute of Frauds.

### b.    Equitable Estoppel Revisited

### i.    The distinction between estoppel theories

Contrary to popular belief, it does not appear that equitable estoppel is appropriately pursued as an independent cause of action.  Confusion abounds in attempts to distinguish the two types of estoppel, leading some courts to treat "reliance induced by a promise as a reason to foreclose an attack on the enforceability of the promise and to limit the remedy to the loss suffered in reliance." Murphy and Speidel, *Studies in Contract Law* (3d) (1984) at 38; *see e.g., Wheeler v. White*, 398 S.W.2d 93 (Tex. 1966).  However, there is an important, if sometimes overlooked, distinction between the two types of estoppel.  *Black's Law Dictionary* (7th ed.) at 571 (Promissory estoppel is "[a]lso termed (inaccurately) *equitable estoppel*.")  Promissory estoppel, sometimes considered to be a theory within or related to quasi-contract, permits the affirmative enforcement of an existing promise for equitable reasons where consideration is lacking.  It allows for the enforcement of "a promise made without consideration" in order to "prevent injustice" if the "the promisor should have reasonably expected the promisee to

rely on the promise and that the promisee did actually rely on the promise to his or her detriment." *Black's* at 571.  Equitable estoppel, in contrast, is a *defensive* tool, used to *preclude the denial* of a particular set of facts.  As one court explained the difference, "Equitable estoppel… is available only as a 'shield' or defense, while promissory estoppel can be used as a 'sword' in a cause of action for damages." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 616 P.2d 644, 646 (1980).  "Promissory is distinct from equitable estoppel in that the representation at issue is promissory rather than a representation of fact."  *Black's* at 571.  All of this is consistent with the leading case on equitable estoppel in Michigan, *Lichon v. American Universal Ins. Co.*, 435 Mich. 408, 459 N.W.2d 288 (1990), in which the Michigan Supreme Court explained:

> Equitable estoppel enables a party to avoid litigating, in a second proceeding, claims which are plainly inconsistent with those litigated in a prior proceeding. However, "[b]ecause the doctrine is intended to insure fair dealing between the parties, the courts will apply the doctrine only if the party asserting the estoppel was a party in the prior proceeding and if that party has detrimentally relied upon his opponent's prior position."

459 N.W.2d at 292.  In light of these distinctions, equitable estoppel does not appear to be a viable, independent cause of action; rather, it is a defensive mechanism used to prevent contradictory assertions from being made in court.

### ii.      The key allegations are defective

Even ignoring the writing requirement with respect to the alleged promise, and overlooking the limitations on how equitable estoppel theory may be used, a closer analysis of what exactly is alleged to have been represented is likewise problematic. Paragraph 47 of the amended complaint blurs the distinction between promises and representations, describing them as follows:

> Defendant made negligent and/or intentional *misrepresentations* of material facts *by promising and representing* to Plaintiff that it would properly assess Plaintiff's eligibility for a HAMP or other modification assistance.

(DE 8 ¶ 47 (emphasis added).)

The written communications which are incorporated in these pleadings, examined above, do not support this alleged promise or representation. Even if the Court assumes that Plaintiff is referring to *an oral promise or representation*, and even if equitable estoppel could provide an independent avenue for affirmative relief, these pleadings do not provide the basis for a legally cognizable claim here. The first amended complaint informs the Court that Defendants' alleged promise was "that it *would properly assess* Plaintiff's eligibility for a HAMP or other modification assistance." (DE 8 ¶ 47 (emphasis added).) As discussed above, there is no private right of action under HAMP. The alleged promise or misrepresentation which forms the basis of Plaintiff's equitable estoppel claim is suspiciously similar to the alleged offer and breach which form the bases of Plaintiff's HAMP claim, which I have rejected for the reasons stated above.

(*Compare* DE 8 ¶¶ 26-27, DE 8 ¶¶ 47, 52.)  Plaintiff may not re-package this claim under a new rubric to thereby create a private cause of action under HAMP.

Moreover, Plaintiff alleges that the promise to "properly assess" his eligibility for "a HAMP or other modification assistance" contained "negligent and/or intentional misrepresentations of material facts[,]" sounding remarkably similar to a fraud or misrepresentation claim.  Plaintiff does not specify what these "material facts" might be, nor is the count pleaded with the requisite specificity required for successfully pleading fraud in federal court.  Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity the circumstances constituting fraud or mistake…."). *See Watts, supra.* 2016 U.S. Dist. LEXIS 183222 at *29 (Cleland, J.) (rejecting fraud claim in context of mortgage loan modification for failure to plead with particularity, as required by Rule 9(b)).  The approach used here has been attempted before in this context and rejected by the Sixth Circuit.  In a strikingly similar case, also alleging "irregularities" in a mortgage foreclosure process and also involving an "'attempt to work out a modification of the mortgage loan[,]'" the Court of Appeals, citing *Lichon*, refused to apply the doctrine of equitable estoppel where "plaintiffs do not adequately plead what fraudulent acts or omissions the defendant committed."  *Gjokaj v. HSBC Mortgage Serv., Inc.*, 602 F. App'x 275, 277-279 (6th Cir. 2015).  Likewise, here, Plaintiff has not adequately pleaded what fraudulent acts or omissions these defendants have committed.  His

references to "misrepresentations" are not only vague, but to the extent that they can be discerned at all, involve only a future course of conduct, not a present state of facts; however, an action for fraudulent misrepresentation or actionable fraud must be predicated on a statement relating to a past or an existing fact. Future promises may not be the basis of an action for fraud. *State Bank of Standish v Curry*, 190 Mich. App. 616, 623, 476 N.W.2d 635 (1991) (citing *Hi-Way Motor Co v International Harvester Co*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976)), *aff'd in part, rev'd in part on other grounds*, 442 Mich. 76, 500 N.W.2d 104 (1993); *see also, Blackward Props.,* 476 F. App'x at 639 (A party generally cannot state a claim for fraudulent misrepresentation based on another party's failure to do something it promised to do in the future).

For all these reasons, the equitable estoppel claim should be rejected.

### 4. Breach of Mich. Comp. Laws § 600.3204[7]

In Michigan, foreclosure of mortgages by advertisement is governed by Mich. Comp. Laws §§ 600.3201-600.3285. Central to Plaintiff's cause of action is

---

[7] I note that Plaintiff's amended complaint contends that "Defendant executed a foreclosure by advertisement upon the subject property on May 27, 2014." (DE 8 ¶ 56.) Moreover, Plaintiff's response contends the redemption period was to expire on November 27, 2014. (DE 19 at 21.) As previously noted, according to correspondence from Nationstar, the loan was referred to its foreclosure attorney on July 6, 2015. (DE 8-4 at 11-12.) Therefore, these dates appear to be typographical errors - a conclusion that is substantiated by a reference to May 10, 2016 as the expiration of the redemption period, more accurately May 11, 2016. (DE 8 ¶ 74; DE 8-1 at 6.)

the provision that "[a] party may foreclose a mortgage by advertisement . . .[,]" if certain circumstances exist, including "[a] default in a condition of the mortgage has occurred, by which the power to sell became operative." Mich. Comp. Laws § 600.3204(1)(a); (DE 8 ¶ 55).

Plaintiff alleges that "Defendant apparently premised its authority to foreclose by advertisement upon its assertion that the Plaintiff had Defaulted upon the conditions of payment of the mortgage even though Plaintiff was being considered for modification assistance." (DE 8 ¶ 57.) Then, after taking issue with the denial of his request for a HAMP loan modification, Plaintiff alleges he "has established the requisite irregularity to set aside the foreclosure sale through the Defendant's conduct in foreclosing a mortgage that was *not in Default*." (DE 8 ¶¶ 58-59 (emphases added).) As he did within his promissory estoppel claim, here, too, Plaintiff contends that the resulting prejudice included "the loss of other opportunities to save his home," such as "seeking another type of loan modification, refinancing the existing loan, pursuing a short sale, renting the property and relocating." (DE 8 ¶ 60; *see also* DE 8 ¶ 43.)

The allegations in Plaintiff's own complaint lead this Court to conclude that Plaintiff was in default with regard to the mortgage in question. To be sure, one portion of the complaint contends that Plaintiff's mortgage "was not in Default." (DE 8 ¶ 59.) However, the Court reads paragraph 57 of the amended complaint as

an attempt to argue that Nationstar taking consideration of Plaintiff's request for modification assistance should prevent it from foreclosing based upon Nationstar's assertion of default. That Plaintiff was engaged in a loan modification process is not, standing alone, synonymous with his loan not being in default. Plaintiff does not allege in his amended complaint that he was up-to-date in his mortgage payments at the time of the communications regarding a possible modification or at the time of the sheriff's sale.[8] Nor did he so argue in his communications or his representative's emails, which are attached to his amended complaint. (*See* DE 8-3 at 2, 4, 9-10; DE 8-4 at 5-7.). This reading of Plaintiff's amended complaint is buttressed by his allegations that he "did attempt to redeem the property however because of the shorten[ed] redemption period Plaintiff ran out of time . . . ." (DE 8 ¶ 19),[9] and that the "breach on November 10, 2015," denied Plaintiff of "*an opportunity to bring the Mortgage current* or explore any other financial options

---

[8] Elsewhere in his amended complaint, Plaintiff mentions "his satisfaction of the trial period plan and ongoing payments under the terms of the trial plans." (DE 8 ¶¶ 42.) Perhaps this is a reference to a previous modification during 2010. (DE 8-2 at 10.) If not, it alleges no more than the fact that Plaintiff made efforts to mitigate his deficiency in financial obligations after his default.

[9] Plaintiff admits that he "did not redeem the property, but rather filed a lawsuit against Defendants on May 9, 2016." (DE 19 at 11.) Out of a sense of completeness, I note that "the filing of a lawsuit is 'insufficient to toll the redemption period[.]'" *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 360 (6th Cir. 2013) (quoting *Overton v. Mortg. Elec. Registration Sys.,* No. 284950, 2009 WL 1507342, at *1 (Mich. App. May 28, 2009) (citing *Schulthies,* 167 N.W.2d at 785)).

the Plaintiff ha[d] available to [him]." (DE 8 ¶ 28 (emphasis added).) Moreover,

this reading is consistent with the attached August 19, 2015 letter from Defendant

Nationstar showing six unpaid installments (DE 8-1 at 8) and the August 31, 2015

REST Loan Disposition Analysis, which seems to indicate that Plaintiff was seven

months past due (DE 8-2 at 10).

### 5.    Injunction and other relief

Plaintiff's final cause of action seeks "injunction and other relief." (DE 8 ¶¶

67-76.) Therein, he alleges that there is a likelihood of success on the merits of his

second through sixth causes of action. (DE 8 ¶ 68.) Furthermore, he prays that the

Court:

> . . . grant his Motion and Stay and Toll the Redemption Period based
> upon the fact that Defendant had offered Plaintiff modification
> assistance, that the Plaintiff sent the Defendant the required
> documentation, that the Defendant erroneously used incorrect
> information to deny Plaintiff the HAMP Loan Modification[.]

(DE 8 ¶ 72.) He seems to ask the Court to grant equitable relief, in the forms of a

preliminary and ultimately permanent injunction, and perhaps in the form of a

constructive trust. (DE 8 ¶¶ 62-66, 74-76; DE 8 at 18-19 ¶¶ A-D; *see also* DE 19

at 23-25.)

However, "[i]t is well settled that an injunction is an equitable remedy, not

an independent cause of action." *Terlecki v. Stewart*, 278 Mich. App. 644, 663,

754 N.W.2d 899, 912 (2008) (citing cases). *See also Lucido v. U.S. Bank Nat'l*

*Ass'n*, No. 15-13697, 2016 WL 3667955, at *8 (E.D. Mich. July 11, 2016)

(dismissing claim where, "[a]lthough styled as a separate count, [it was] simply a

demand for injunctive relief and alleges no substantial cause of action.").

Moreover, "'[i]t is not the remedy that supports the cause of action, but rather the

cause of action that supports a remedy.'" *Henry v. Dow Chem. Co.*, 473 Mich. 63,

96–97, 701 N.W.2d 684, 701 (2005) (quoting *Wood v. Wyeth–Ayerst Labs.*, 82

S.W.3d 849, 855 (Ky., 2002)).

Plaintiff having failed to state a claim upon which relief may be granted, the

Court need not further consider his requests for injunctive relief.

### 6. Effect of state court judgment of possession, and Plaintiff's appeal therefrom, upon Plaintiff's instant complaint

Defendants' supplemental brief contends that "Plaintiff's Amended

Complaint should be dismissed pursuant to the doctrines of *res judicata* and

collateral estoppel[,]" based upon the state circuit court's March 10, 2017 opinion

and order (affirming the trial court's judgment of possession). (DE 32 at 2.)

However, given that Plaintiff's amended complaint fails to state a claim upon

which relief may be granted, the Court need not address whether the claims therein

are barred by the doctrines of collateral estoppel and *res judicata*. Likewise, the

Court does not need to address the issues posed in Plaintiff's responding

supplemental brief, including the effect, if any, of Plaintiff's April 27, 2017

delayed application (to appeal) upon these doctrines. (DE 33 at 1 ¶ D.)

**F.    Conclusion**

At this time, Defendants' request for an award of costs and attorney fees (DE 16 at 2, 28) should be denied as premature.  If the Court enters judgment in favor of Defendants, they may apply for such relief in accordance with Fed. R. Civ. P. 54(d) ("Costs; Attorney's Fees.") and 28 U.S.C. § 1920 ("Taxation of costs").  Meanwhile, for all of the above stated reasons, I recommend dismissal of the complaint in its entirety under Fed. R. Civ. P. 12(b)(6).

## III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 19, 2017          s/Anthony P. Patti
                             Anthony P. Patti
                             UNITED STATES MAGISTRATE JUDGE


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 19, 2017.

                             s/Marlena Williams
                             In the absence of Michael Williams
                             Case Manager